IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

**FILED**

JUL 15 2015

Clerk, U.S. District Court
District Of Montana
Missoula

| | |
|---|---|
| GYME KELLY, | Cause No. CV 13-84-M-DWM-JCL |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATIONS OF MAGISTRATE JUDGE |
| LEROY KIRKEGARD; ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

## I.    Introduction

Petitioner Gyme Kelly, a state prisoner, filed this action seeking habeas corpus relief under 28 U.S.C. § 2254. Kelly was initially proceeding pro se, but is now represented by court appointed counsel.

Kelly entered an open plea of guilty in Montana State District Court to driving under the influence of alcohol ("DUI"), which subjected him to persistent felony offender designation. He also admitted to violating a condition of his prior suspended sentence imposed on a prior DUI conviction. On March 3, 2011, judgment was entered in Cause No. DC-10-42, the felony DUI matter, sentencing Kelly as a persistent felony offender to serve 40 years in the Montana State Prison (MSP), with 25 suspended. (Doc. 9-13 at 2). His sentence in the DUI case was ordered to run consecutively to Cause No. DC-04-86, the revocation. For the

1

revocation, Kelly received a 15 year sentence to MSP. (Doc. 33-7). He did not appeal. Kelly's conviction became final 60 days later, on May 2, 2011. Pet. (Doc. 1 at 2-3 ¶¶ 1-6); 28 U.S.C. § 2244(d)(1)(A).

On December 30, 2011, Kelly filed a petition for postconviction relief in the trial court. *See,* (Docs. 9-16, 9-19). The trial court denied relief and Kelly subsequently appealed. Notice, *Kelly v. State*, No. DA 12-0217 (Mont. filed March 30, 2012). On January 29, 2013, the Montana Supreme Court affirmed dismissal of his state postconviction petition because Kelly failed to meet the postconviction pleading requirements. *Kelly v. State*, 2013 MT 21, ¶ 11, 368 Mont. 309, ¶ 11, 300 P.3d 120.

Kelly filed his federal petition on April 28, 2013. Pet. at 8, Pet. Decl. ¶ C; *Houston v. Lack*, 487 U.S. 266, 270-71 (1988).

Initially, Kelly put forth one claim for relief. He alleged that his counsel failed to communicate to him a plea offer that "would have allowed for less time to be served." (Doc. 1 at ¶ 13A). Kelly then, through counsel, sought to amend his petition to include three grounds for relief: First, Kelly contends that he was denied his Sixth and Fourteenth Amendment right to effective assistance of counsel because his lawyer failed to adequately and timely inform him of plea offers made by the state. As a result, he pleaded guilty without a plea agreement and was sentenced to more severe punishment than he likely would have received by

2

pleading guilty with a plea agreement. (Doc. 20 ¶ 3); *see also* (Doc. 32). Second, Kelly alleges that he was denied his Sixth and Fourteenth Amendment right to effective assistance of counsel because his lawyer failed to advise him to accept a plea offer. As a result, he pleaded guilty without a plea agreement and was sentenced to more severe punishment than he likely would have received by pleading guilty with a plea agreement. (Doc. 20 ¶ 4). Finally, Kelly contends that he was denied his Fifth, Sixth, and Fourteenth Amendment rights to due process of law because he did not knowingly, intelligently, and voluntarily enter his plea of guilty and admission of true to the revocation. *Id.* at ¶ 5.

## II.    Background

On Thursday, November 10, 2010, a change of plea hearing was held in Kelly's case. At the outset of the hearing, Kelly's attorney advised the trial court that it was Kelly's intention to plead guilty to the DUI and make admissions in the revocation matter "without a plea agreement." (Doc. 9-9 at 2). The court explained to Kelly the right to a jury trial on the felony DUI charge, the right to a hearing on the revocation, and the burden of proof associated with each procedure. Kelly acknowledged that by proceeding he would be waiving the right to put the state to its proof, as well as his right to remain silent. *Id.* at 2-3. Kelly affirmed that he understood those rights. *Id.* at 3. Kelly also affirmed that he had the opportunity to review both cases with his attorney and that he was satisfied that

he'd had enough time to talk the cases over with counsel. *Id.* Kelly also advised

the court that he was not under the influence of any medication, drugs or alcohol

and that he was not suffering from any emotional or physical disabilities. *Id.* He

reiterated that he was satisfied with his attorney and that they had had enough time

to consult together. *Id.* at 3-4.

With regard to the revocation, the court confirmed that the original sentence

was 20 years MSP with 15 of those years suspended, thus, leaving a potential

sentence of 15 years. *Id.* at 4. In relation to plea negotiations, the following

information was disclosed by the County Attorney:

> Your Honor, the State's original intention—that is again not my case.
> There was a plea agreement wherein the deputy county attorney had
> intended to recommend 15 years be imposed and there was an
> additional sentence for the new DUI. I had discussed with [Kelly's
> attorney] Mr. Anciaux a somewhat different recommendation on that,
> which would be 15 with 5 suspended. But apparently that was – the
> defendant chose not to.

*Id.* at 4-5. After this exchange, the court explained to Kelly that she could sentence

him to MSP for up to 15 years on the revocation and that that sentence would run

consecutively to the sentence imposed in DC 2010-42 (hereinafter "the DUI"). *Id.*

at 5. Kelly acknowledged that he had not been threatened with any harsher

punishment than that allowed by law, that he was not forced to plead guilty nor

under duress, and that no promises had been made to him in relation to his plea of

guilty or his admission. *Id.*

The court then asked Mr. Anciaux to begin laying a factual basis for Kelly's

plea and admission.  The following exchange occurred:

Anciaux:    Mr. Kelly, we have had a chance to go through the report of
            violation and the addendum to the report of violation.  Is that
            correct?

Kelly:      Yes.

Anciaux:    And we've also had a chance to go through all of the paperwork
            supplied by the State in DC 10-42 concerning driving under the
            influence, fourth or subsequent offense; correct?

Kelly:      Correct.

Anciaux:    And you've had the opportunity to plea bargain in that matter?

Kelly:      Yes, I have.

Anciaux:    And the plea bargain that they most recently offered you
            decided was not one that you would take.  Is that correct?

Kelly:      Yes.

Anciaux:    And so you have decided, because one of your options, to plead
            guilty in DC 10-42 and to admit some violations in the
            revocation.  Is that correct?

Kelly:      That's correct.

Anciaux:    And that's without a plea bargain.

Kelly:      Yes.

Anciaux:    It's also with the understanding that the State has filed a
            persistent felony offender notice in DC 10-42.  Is that correct?

Kelly:      Yes.

*Id.* at 6-7.

The court proceeded to discuss with Kelly the exact penalty that could be imposed with regard to the persistent felony offender designation. The court specifically advised Kelly that the minimum penalty he would be facing would be 5 years and the maximum would be 100 years. *Id.* at 7. The County Attorney interjected and stated that due to Kelly's status as a multiple persistent felony offender, the mandatory minimum Kelly faced was actually 10 years. *Id.* at 7-8. After clearing this up, defense counsel proceeded with the plea colloquy. Kelly admitted to the factual basis for the DUI charged on February 22, 2010. *Id.* at 8. He also admitted that being under the influence and pleading guilty to DUI violated the conditions of the probationary terms of his suspended sentence for which he was being revoked. *Id.*

The court then concluded the change of plea hearing as follows:

> Very well. The defendant's admissions to the allegations in the report of violation of March 15th, 2010, are sufficient to satisfy the petition to revoke his sentence and the defendant's suspended sentence in that matter is revoked.
> The defendant's admissions then and statements with regard to DC 2010-42 are also sufficient. The Court does in both cases make the following findings; that the defendant is acting under the advice of competent counsel, that he understands his rights, the charges against him and the maximum possible punishment, that he is not under any mental, physical or emotional defect or disability, that he is not under the influence of drugs or alcohol, that no promises or threats have been made to cause him to enter his pleas or his admissions, that he is competent to aid in his own defense, that he has admitted to the factual obligation in DC 2010-42, so that the defendant's plea to that case is entered voluntarily, knowingly and

6

intelligently. I therefore find the defendant guilty of driving under the influence of alcohol or drugs, fourth or subsequent offense, a felony.

*Id.* at 10.

On January 20, 2011, dispositional hearings were held in both of Kelly's cases. At the outset the court was reminded that Kelly was being sentenced in both matters without plea agreements. (Doc. 9-12 at 3). In the new felony DUI case, the State recommended 40 years with 25 suspended MSP. *Id.* In relation to the revocation, the State recommended 15 years MSP to be served consecutively to the DUI. *Id.*

The defense recommended that on the revocation, Mr. Kelly receive a 15 year sentence to the Montana Department of Corrections with 10 years suspended. *Id.* at 5. On the DUI, the defense recommended a 20 year commitment to the Department of Corrections with 10 years suspended, to be served consecutively to the revocation. *Id.* The aggregate defense recommendation was 35 years with 20 of those years suspended. In support of its argument, the defense presented the court with a packet containing records from the Department of Corrections relating to sentences received across the state from similarly situated defendants, including offenders with many lifetime DUI convictions, as well as persistent felony offenders. The rationale behind the defense request for a DOC commitment was to allow Kelly the opportunity for further treatment and programming. *Id.* at 6.

Defense counsel made the following argument:

7

> The State offered a plea bargain that was 30 with 20 on the new
> charge and 15 with none suspended on the revocation to run
> concurrently for a total sentence of 30 with 15 suspended[1]. We've
> kind of blown that out of the water with the State's recommendation
> that they're making today. It's curious that the only difference
> between the sentence they're recommending under the plea bargain
> and today is that Mr. Kelly decided not to take the plea bargain. And
> so now he's getting, if my addition is correct, 10 more years prison –
> just 10 more years on top of – well, actually not, 55 years as compared
> to 30. So 25 years and an additional 15 years of prison for not taking
> the plea bargain.

*Id.* at 7-8. The State countered by using the Department of Corrections statistics

provided by defense counsel to point out that none of the individuals referenced in

the materials were being sentenced for a 12th lifetime DUI, as was Kelly. *Id.* at 9-

10. The state referred to another Lake County matter where an individual,

similarly situated to Kelly, received a 40 year sentence with 20 years suspended.

*Id.* at 10. The State referenced all the prior treatment that Kelly had received,

agreed he was in need of more treatment, but stressed that Kelly was a public

danger due to his inability to stay out of a vehicle while intoxicated. *Id.* The state

then renewed its sentencing request. *Id.* at 10-11.

In fashioning an appropriate sentence, the court commented as follows:

> In DC 2010-42 on a 12th DUI, with regard to a persistent felony
> offender, my initial thought was to give you five years for every single one
> of those DUI's, which would be a 60-year sentence. But I think that Mr.

---

[1] It is important to note that because of Kelly's status as a persistent felony offender, by law he was not entitled to
concurrent sentences. *See*, MCA § 46-18-502(4). The Court also expressly advised Kelly, prior to his plea, that his
two sentences would run consecutively. (Doc. 9-9 at 5). Additionally, the County Attorney discussed two different
possibilities for the revocation sentence and that the sentence on the new DUI charge would be in addition to the
revocation. *Id.* at 4-5.

Anciaux makes a point in the sense that you did not put the State to the process of going through with a full-blown trial and you waive as a result of your plea of guilty any right to appeal that matter. And I think those along with the fact that you did accept responsibility after the fact for your conduct should weigh into it.

The State's recommendation is then 40 with 25 suspended. What my intention essentially to do is to make sure that there is no opportunity for you to get behind the wheel of a vehicle under the influence again. So it is my intention under the circumstances in this case, what I am going to sentence you to because I don't see any way to do it that wouldn't – I want that protection. And I can't imagine another set of circumstances other than if people died that would legitimize the maximum sentence but for the fact that you accepted responsibility.

So you can to some degree consider yourself fortunate that the State made the recommendation they did. Because had I been left to my own devise mine might be more severe. But I am going to impose what the State's requesting, which is 40 years with 25 suspended to the Montana State Prison and a thousand dollar fine. And in DC 2004-86 you are sentenced to 15 years at the Montana State Prison with none of that suspended. *Id.* at 12-13.

The two sentences were ordered to run consecutively to one another. (Doc. 9-13 at 2); (Doc. 33-7).

### III.   Analysis

Although some or all of Kelly's claims may be barred on procedural grounds or time barred, it is clear that he is not entitled to relief on the merits of his claims. Accordingly, it is more efficient to proceed to the merits. *See, e.g.,* 28 U.S.C. § 2254(b)(2); *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (making detailed analysis of constitutional issue despite outstanding question as to procedural bar); *Gutierrez v. Griggs*, 695 F.2d 1195, 1198 (9th Cir. 1983).

Upon further review of the record and argument from counsel, this appears

to be a case of buyer's remorse. Mr. Kelly, thinking he may have a shot at a better outcome with an open plea, rather than that which was being offered by the state, took a gamble. When his gamble didn't pay off, he was left with a sentence he probably didn't expect. This is not to say that the Court condones the apparent lack of a policy in Lake County requiring the written memorialization of plea offers or of Kelly's trial counsel's failure to document offers conveyed and meetings with his client. Had such a policy been in place, it may have eliminated the claims which Kelly attempts to raise in this Court. *See e.g., Missouri v. Frye*, __ U.S. __, 132 S. Ct. 1399, 1409, 182 L. Ed. 2d 379 (2012) ("The prosecution and the trial courts may adopt some measures to help ensure against late, frivolous, or fabricated claims after a later, less advantageous plea offer has been accepted or after a trial leading to conviction with resulting harsh consequences.").

Most telling are the transcripts from the change of plea and sentencing hearings, wherein Kelly repeatedly stated unequivocally that it was his desire to proceed without a plea agreement. Not once did Kelly respond to the court's inquiries by expressing any reservation, consternation, or unhappiness at proceeding with his attorney or with entering an open plea. In fact, quite the contrary, Kelly acknowledged he'd had adequate time to meet with counsel, to plea bargain, to discuss his options, and that he intended to proceed without the benefit of a plea agreement.

## A. Kelly's Ineffective Assistance of Counsel Claim

It is undisputed that defendants have a Sixth Amendment right to counsel that extends to the plea-bargaining process. *Padilla v. Kentucky*, 559 U.S. 356, 373, 130 S. Ct. 1473, 1486, 176 L. Ed. 2d 284 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). In *Hill*, the Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." 474 U.S., at 58, 106 S. Ct. 366. Under *Strickland*, to establish a viable claim, a defendant must demonstrate 1) that counsel's representation fell below an objective standard of reasonableness, and 2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Kelly makes two claims regarding the alleged ineffective assistance of his trial counsel. The first is that his counsel failed to timely inform him of the plea agreements, the second is that counsel failed to advise Kelly to accept the proffered agreement, both failures resulting in a harsher punishment to Kelly. The thrust of Kelly's ineffective assistance arguments rely on *Missouri v. Frye*, __ U.S. __, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012) and *Lafler v. Cooper*, __ U.S. __, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012). Although the Montana Supreme Court addressed

*Frye* in a limited context in its decision affirming the denial of Kelly's postconviction action, the State argues that neither of these cases should be considered because they did not constitute "clearly established federal law" for purposes of 28 U.S.C § 2254(d) review. (Doc. 23 at 23).

As the Ninth Circuit has observed, neither *Frye* nor *Lafler* decided a new rule of constitutional law. *Buenrostro v. United States*, 679 F. 3d 1137, 1140 (9th Cir. 2012). The Supreme Court in both cases merely applied the Sixth Amendment right to effective assistance of counsel according to the test articulated in *Strickland* and established in the plea-bargaining context in *Hill*. See *Frye*, 132 S. Ct. at 1404-08 (stating "[t]his application of *Strickland* to the instances of an uncommunicated, lapsed plea does nothing to alter the standard laid out in *Hill*"); *Lafler*, 132 S. Ct. at 1383 (stating that the "question for this Court is how to apply *Strickland's* prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial"). In both cases the Court applied an established rule to the underlying facts, neither case broke new ground nor imposed a new obligation on the State or Government. *Buenrostro,* 679 F. 3d at 1139-40. The Court will consider both *Frye* and *Lafler*, in conjunction with *Strickland* application, to reach the merits of Kelly's claims.

In *Missouri v. Frye*, the defendant pleaded guilty to felony driving while revoked. *Missouri v. Frye*, 132 S. Ct. 1399, 1404. Unbeknownst to Frye, the

12

prosecutor had sent his attorney a letter offering two possible plea bargains, including an offer to reduce the felony charge to a misdemeanor. *Id.* Counsel failed to communicate these offers to Frye and they expired. Frye ultimately plead guilty with no plea agreement and was sentenced to three years in prison. *Id.* at 1404-05. The Court held that "as a general rule, defense counsel has a duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. When defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires." 132 S. Ct. at 1408.

The same cannot be said in Kelly's case. While there is no written documentation of a formal offer, the record reflects that an offer was made and presented, albeit verbally, to Kelly. *Supra* at 5. For this reason, Kelly cannot meet this first prong of *Strickland*; while we cannot say with certainty that the offer was "formal" it is clear that there was an offer that was extended to and discussed with Kelly. The record demonstrates that Kelly's counsel's conduct did not fall below an objective standard of reasonableness by failing to present a claim, as did Frye's attorney. Anciaux presented the offer and Kelly rejected it.

Additionally, there was discussion, on the record, about what this most recent offer consisted of. It had apparently been made clear to the prosecutor that

Kelly was expressly choosing not to accept this offer and the prosecutor conveyed that understanding to the court. (Doc. 9-9 at 4-5). Neither Kelly or his attorney refuted the prosecutor's statement, in fact, as set forth above, Kelly expressly stated during his plea colloquy that he'd rejected the latest offer.

Even assuming that Kelly was able to meet the first prong of the *Strickland* test, he cannot establish prejudice under the second prong. To do so, Kelly would need to demonstrate a reasonable probability that he would have accepted the earlier plea offer had he been afforded effective assistance. *Frye*, 132 S. Ct. at 1409. And Kelly must demonstrate a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it. *Id.*

Of course, at this stage of the proceedings Kelly is stating that he would have accepted the offer. He states this despite going on record and rejecting the offer after he had listened to the prosecutor in open court discuss the terms of the proposed offer. Kelly did this knowing he was facing a minimum of 10 years on the DUI pursuant to his designation as a persistent felony offender, knowing that his supervising officer was recommending a 15 year prison sentence on the revocation, and after being advised that the court intended to run his two sentences consecutively. Kelly cannot show that he would have accepted the earlier plea, because he directly told the court that he was rejecting this very offer that had been

conveyed to him.

This Court is also not convinced that the trial court would have accepted a lesser sentence. The court was sentencing Kelly on his 12th lifetime DUI and his second time, in that very same court, as a persistent felony offender. In fact, the trial court's initial intention was to sentence Kelly to 60 years in prison. (Doc. 9-12 at 12-13). As a preface to the sentence, the following exchange occurred:

> Court: Well, certainly makes at least some difference to the Court that you took responsibility here. The concern for the Court is how do I protect the rest of the world from you. You can't do what you've done. I mean, at this point the 12th DUI, it's ridiculous. It's a third felony DUI; it's a second persistent felony offender. And essentially now the Court's had a hundred year bite at you twice on this and still none of that has really made enough difference that you don't get behind a wheel. I'm thankful, I'm shocked that somebody hasn't gotten hurt. Is there any reason why sentence should not pronounce at this time?
>
> Kelly: No, there isn't Your Honor.

(Doc. 9-12 at 11).

Even knowing the Court's firm outlook toward him, knowing the harsh recommendations made by both the prosecution and the probation department, Kelly did nothing to alert anyone in the courtroom that he was uncomfortable proceeding to sentencing.

Throughout his initial petition, Kelly makes reference to "signing a plea" and "his written plea agreement." (Doc. 2 at 1-3). Kelly also refers to a certain provision "on page 2, item #3a" of his written plea agreement. (Doc. 2 at 3). But

15

there is nothing in the state court record suggesting a signed written plea agreement ever existed. And neither Kelly nor his counsel made any references to written plea agreements at either his change of plea hearing or sentencing.

In his original memorandum in support of his petition (Doc. 2) and in his amended petitions (Docs. 20 and 32) Kelly also makes reference to another offer extended by the state. From the references it is unclear when this purported offer was made. In support of his petition for postconviction relief in state court, however, Kelly stated that "counsel informed [Kelly] of a plea bargain by the State which would have resulted in a 'lesser' amount of time to be served, just prior to sentencing." (Doc. 9-17 at 6). Kelly went on to explain:

> [Kelly's] counsel mentioned [the possibility of a different plea offer] just moments before sentencing but still insisted that the Petitioner plead guilty to the initial plea agreement so that the Petitioner could apply for Sentencing Review with the possibility of receiving a favorable sentence reduction from the Sentencing Review Board.

*Id.* at 7. Kelly made a similar assertion before this Court: "His trial counsel assured [Kelly] that his sentence would probably be reduced in sentence review due to its harshness (40 years with 25 suspended). His counsel then convinced [Kelly] to accept the only plea communicated to him at the time." (Doc. 2 at 1).

A common sense review of Kelly's claim regarding this alleged new offer, shows Kelly's argument to be nonsensical. Kelly would have this Court believe that, just prior to sentencing, either a different offer was extended to him by the

State or that his counsel chose that moment in time to tell him of an offer which he'd previously failed to disclose. First, Kelly had already changed his plea and was being sentenced imminently. There was no reason or incentive for the State to make a new and different offer at such a late date, especially just prior to sentencing, when Kelly had already entered a change of plea. Furthermore, the argument and recommendation made by the state at sentencing directly contradicts the existence of this new and better offer. Once Kelly rejected the offer discussed during the change of plea hearing, the State would have had no interest in further bargaining with Kelly.[2]

Additionally, Kelly's explanation of his counsel urging him to accept a harsh sentence so that he could pursue relief either via sentence review or a postconviction petition is incredible. There would have been no reason for counsel to have such a discussion with Kelly until after he was actually sentenced, because Kelly's counsel could not have known until that time what the sentence was even going to be. Furthermore, Kelly pled open: there was no agreement for counsel to pressure him to accept.

When taken together, all this tends to show that Kelly, dissatisfied with the sentence he received, is grasping at legal straws to make a claim for relief from the

---

[2] In fact, at sentencing the prosecutor stated: "[y]our Honor, I object to any mention of the plea agreement. It was not accepted and [this sentencing] is not being done pursuant to the plea agreement." (Doc. 9-12 at 7). She went on to add, "[t]he plea agreement would have insured that the defendant would have been found guilty and so the state offered the defendant an inducement to plead guilty. He rejected that and now I feel that I'm free to argue for whatever sentence I think is appropriate." *Id.* at 9.

decidedly harsh sentence. Unfortunately, the record itself defeats Kelly's claims. Furthermore, even if Kelly had entered into a plea agreement, the Court was not bound to follow the terms of the sentence recommended by the agreement, and Kelly would not have been allowed to withdraw his guilty plea had the court rejected the agreement, pursuant to the court's policy which Kelly had acknowledged. *See,* (Doc. 9-5, p. 5, ¶ 2).

In applying the first prong of *Strickland* the *Lafler* court held that defendant's counsel was deficient by advising the defendant to reject the plea offer on the grounds that he could not be convicted at trial. *Lafler,* 132 S. Ct. 1376, 1386. The analysis then turned to the *Strickland* prejudice prong to determine if defendant could show that "there was a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citing, *Strickland* at 694, 104 S. Ct. 2052). "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler,* 132 S. Ct. at 1386 (referencing *Frye*)(citations omitted). In *Lafler* prejudice was apparent: the ineffective advice led to the rejection of a plea offer and the defendant having to stand trial where he was convicted of all charges and received a sentence 3 ½ times as harsh as that which was initially offered and rejected. There, the petitioner demonstrated prejudice because there was "a reasonable probability he and the trial court would have

accepted the guilty plea." *Lafler*, 132 S.Ct. at 1391.

*Lafler* also made reference to *Hill v. Lockhart*. In *Hill*, it was argued that counsel's ineffective assistance prejudiced the petitioner by leading to the improvident acceptance of a guilty plea, rather than allowing the defendant to pursue his right to proceed to trial. *Hill*, 474 U.S. at 59.

The instant case is unlike *Lafler* or *Hill*. Kelly does not allege he was given erroneous advice in relation to his potential defense that caused him to reject an offer and proceed to trial, or that he was pressured to accept a plea and forego his right to a trial. There is nothing in the record to indicate that Kelly was actually innocent of the crimes charged or that he had a viable defense. While the substance of Kelly's privileged discussions with counsel are unknown, we do know Kelly expressly informed the Court that he was choosing not to accept the plea offer tendered by the State. At the sentencing hearing, Kelly's counsel reiterated that his client had rejected the State's plea offer. *See supra* at 7-8.

From the record it appears that Kelly's counsel came prepared to sentencing, with statistics and documents from the Department of Corrections to assist in his sentencing recommendation argument on behalf of his client. The sentence suggested by the defense was certainly less harsh than any plea offer that had been extended by the State. The fact that the court chose not to follow the defense recommendation, does not make Kelly's counsel's representation per se

ineffective.

Moreover, as set forth above, Kelly has not demonstrated prejudice, in fact, quite the opposite. Even if Kelly had accepted the plea offer it is unlikely the trial court would have accepted and followed the recommendation. Thus, in relation to both the DUI and the revocation, Kelly cannot sustain his burden under either prong of *Strickland*. There is no indication that Kelly received ineffective assistance of counsel by his attorney's failure to inform him of plea offers made by the state or counsel's failure to advise Kelly to accept an offer extended by the state.

### B. Kelly's Due Process claim

Kelly did not raise a due process claim until his amended petition was filed by counsel. (Doc. 20 at 3, ¶ 5). This Court is not convinced that this claim relates back to the common core of operative facts, uniting the due process claim to the original ineffective assistance of counsel claim, as such, it is likely time-barred, *see Mayle v. Felix*, 545 U.S. 644, 659 (2005), as well as procedurally defaulted. But this claim also fails on the merits, and will be addressed accordingly.

Habeas relief lies only for violations of the Constitution, laws, or treaties of the United States. *E.g., Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475 (1991). The Constitution requires that a plea be knowing, intelligent, and voluntary. *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274

(1969) The record must show that the defendant voluntarily relinquished his privilege against self-incrimination, his right to trial by jury and his right to confront his accusers, *e.g., United States v. Escamilla-Rojas*, 640 F. 3d 1055, 1062 (9th Cir. 2011), and that he understood the nature of the charges and the consequences of his plea, *e.g., Tanner v. McDaniel*, 493 F. 3d 1135, 1146-47 (9th Cir. 2007); *Little v. Crawford*, 449 F. 3d 1075, 1080 (9th Cir. 2006). Beyond these essentials, the Constitution "does not impose strict requirements on the mechanics of plea proceedings." *Escamilla-Rojas*, 640 F. 3d at 1062 (citing *Brady v. United States*, 397 U.S. 7452, 747 n. 4, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970)).

At the time of his change of plea hearing, the Court reviewed Kelly's rights with him. Kelly acknowledged an understanding of the rights he would be waiving and confirmed the voluntary nature of his decision to proceed forward:

> The Court: Then in these matters, Mr. Kelly, you have certain rights that are afforded to you. In [the DUI case] you have the right to require the State to prove the case they have against you beyond a reasonable doubt. In [the revocation] you have the right to an adjudicatory hearing at which point the State has to prove the case by preponderance of the evidence. You realize that by making admissions in either of these cases obviously you would be waiving the obligation of the State to make that proof and your right to remain silent.
>
> Kelly: I do, Your Honor.
>
> ...
>
> Court: Are you presently under the influence of any medication, drugs or alcohol?

21

| | |
|---|---|
| Kelly: | No, I'm not. |
| Court: | Are you suffering from any emotional, physical or mental disability? |
| Kelly: | No, I'm not. |
| Court: | Are you satisfied with your attorney? |
| Kelly: | Yes. |
| Court: | And you said you've had enough time to go over both cases with him. |
| Kelly: | Yes, your honor. |

(Doc. 9-9 at 2-4). The Court confirmed with Kelly that on the revocation he was facing up to a 15 year prison term that would run consecutively to the DUI sentence. *Id.* at 4-5. The Court also verified that Kelly understood he was facing a minimum of 10 years and up to 100 years on the DUI because he was a multiple persistent felony offender. *Id.* at 7-8. Kelly acknowledged that he hadn't been threatened, forced, or coerced into entering his plea of guilty and admission. *Id.* at 5.

With the assistance of counsel, a factual basis for Kelly's plea of guilty to the DUI and his admission in the revocation proceeding was placed on the record:

| | |
|---|---|
| Anciaux: | So on February 22, 2010, were you operating a motor vehicle on the way of the state open to the public? |
| Kelly: | Yes. |

Anciaux:     And at that time had you consumed alcohol?

Kelly:       Yes, I had.

Anciaux:     And in fact your blood alcohol came back over .08. Is that correct?

Kelly:       Yes.

Anciaux:     So were you under the influence of alcohol on that date?

Kelly:       Yes, I was.

Anciaux:     In relationship to the revocation proceedings there have been various allegations made. Is it your intention to deny all of the allegations with the exception having drank alcohol and being under the influence on February 22, 2010?

Kelly:       Yes, it is.

Anciaux:     And now pleading guilty to a driving under the influence charge. Is that correct?

Kelly:       That's correct.

Anciaux:     So those would violate the conditions of your probation whereby you were not supposed to consume alcohol.

Kelly:       Yes, sir.

Anciaux:     And you were supposed to obey the law.

Kelly:       Yes.

Anciaux:     And all other allegations in the report of violation and the addendum to the report of violation you're denying. Is that correct?

Kelly:       Yes.

Anciaux: You doing this of your own free will?

Kelly: I am.

Anciaux: No further questions, Your Honor.

(Doc. 9-9 at 8-9).

As is clear from the record, during this exchange, Kelly made no protestations of innocence nor were there any other special circumstances which caused the voluntariness of the plea to be placed into question. Kelly admitted to driving under the influence of alcohol and violating the conditions of his prior sentence, his "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977).

There is nothing in the record that would indicate that Kelly didn't understand what was happening. In fact, Kelly had been through the criminal justice system many times before and had been sentenced by the very same court as a persistent felony offender in a DUI matter five years previously to the sentencing at issue in this matter. *See*, (Doc. 9-10 at 2-4). Kelly affirmatively relinquished his privilege against self-incrimination, his right to a trial by jury, his right to a revocation hearing, and the right to confront his accusers. The record reveals that Kelly understood the nature of the charges against him and the consequences of both his plea of guilty to the DUI and his admission to the report

24

of violation. There is simply nothing in the record to suggest that Kelly misunderstood his rights or involuntarily entered his plea and there is no question that this procedure complied with due process.

## Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Kelly has not made a substantial showing that he was deprived of a constitutional right. There are no close questions and there is no reason to encourage further proceedings. A certificate of appealability should be denied.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. Mr. Kelly's petition should be DENIED and DISMISSED WITH PREJUDICE; his claims are without merit.

2. The Clerk of Court should be directed to enter, by separate document, a judgment of dismissal.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Kelly may object to this Findings and Recommendation within 14 days.[3] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Mr. Kelly must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address." Failure to do so may result in dismissal of this action without notice to him.

DATED this 15th day of July, 2015.

Jeremiah C. Lynch
United States Magistrate Judge

---

[3] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.